UNITED STATES DISTRICT COURT
IN AND FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

ANGIE DUCKWORTH,

                              Plaintiff,

Versus                                     Civil Action No.
                                                            CV-07-B-0441-W

CHOICEPOINT, INC., ET AL,                     JURY DEMANDED

                              Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PROTECTIVE ORDER**

MAY IT PLEASE THE COURT:

      Plaintiff, ANGIE DUCKWORTH, respectfully opposes Defendant's motion and proposed protective order should be rejected or, alternatively, an in camera inspection of the subject records should be conducted, as follows:

      Defendant CHOICEPOINT has failed to remedy its driver-accident reportings ["consumer reports" under 15 U.S.C. 1681a] made about plaintiff despite Fair Credit Reporting Act disputes, under 15 U.S.C. 1681i[a], and its practice of mixing together records of people with similar names, which are violations of 15 U.S.C. 1681e[b]. Now, defendant seeks a "blanket protective order" covering unspecified documents, both to be produced now and at any later time in the lawsuit. Page 1, memo in support. Defendant contends that such an order "facilitates" discovery however that discovery takes place in the dark and not in the light of day. Defendant claims the documents sought are confidential and warrant protection yet no one is able to contest it since no one has seen the records and cannot testify about documents that defendant solely possesses. How could anyone contest a contention that such an overreaching order is warranted? Defendant

has not explained why the records generally described warrant confidential status. To impose a blanket protective order requiring plaintiff to unravel the effects of the order and bear the burden of proof is grossly unfair and improper.

## Text of the Proposed Protective Order

It is no secret that in a credit reporting case, the defendant possesses the bulk of the information and documents to be used in evidence. Unfortunately, unlike some cases [auto collision, for ex.] where a plaintiff possesses most of the evidence and documentation, credit reporting agencies, like this defendant, maintain almost all of the relevant information and documentation. Wrenching it from them can be an arduous task. Court may unwittingly allow protective orders with the hope of expediting discovery despite the greater concerns addressed herein. These concerns are the very reason for the Fair Credit Reporting Act.[1] The purposes and reasons stated by Congress in passing the law are the same concerns being overlooked when protective orders are rubber-stamped.

Defendant's proposed Confidentiality Stipulation and Protective Order [CSPO] is of no benefit to plaintiff. Plaintiff possesses no documents which would fall under the CSPO. The definition of "confidential information" is far beyond the normal reach of the language permitted to be deemed worthy of confidential status. The definition asserted in par. 5[a] permits defendant

---

[1] In **Cairns v. GMAC Mortg. Corp.**, Slip Copy, 2007 WestLaw 735564 [U.S.D.C. Ariz. 2007] (No. CIV 04-1840-PHX-SMM.), the court stated: "Equifax is a national consumer credit reporting agency that assembles and produces credit reports for use by its clients in evaluating the potential credit risk of consumers. As a consumer reporting agency, Equifax is governed by the Fair Credit Reporting Act, 15 U.S.C. 1681, et seq. ("FCRA"). The FCRA was enacted to protect consumers from the transmission of inaccurate information about them. **Kates v. Croker Nat'l Bank**, 776 F.2d 1396, 1397 (9th Cir.1985). It was the product of congressional concern over abuses in the credit reporting industry. **Guimond v. Trans Union Credit Information Co.**, 45 F.3d 1329, 1332 (9th Cir. 1995). The FCRA has a legislative history steeped in evidence of congressional intent to protect consumers from the transmission of inaccurate information. Id. Its contributors sought to create legislation to establish accurate, relevant, and current reporting practices. Id."

to deem "business...information" and simple "...non-public information..." and "...not commonly known or available to the public.." as confidential. What could be more sweeping? Par. 5[a] is completely unacceptable.

Defendant has not been asked to produce a "trade secret" or information that would give a competitor an advantage. In reality, the agencies through Consumer Data Information Association jointly develop and draft their policies and procedures so it is unrealistic to think that a policy or procedure based on an interpretation of the Fair Credit Reporting Act would differ between them. The only advantage sought here is to prevent other consumers from learning of the defective policies and procedures and to stymie another court or jury from learning about documents produced in this litigation. Protective orders should not be used to conceal information relevant to the pattern and practice of the defendant.

Next, solely based on defendant's decision to mark a document or deposition transcript or interrogatory answer, etc., as "confidential" would trigger a series of burdens to plaintiff. Not only must the document then be specially handled in discovery, depositions, motion practice, trial preparation, and trial but then it must be returned at the close of the case so that no record of it exists should issues arise later as to the accuracy of the information in that document or truthfulness of the defendant's witnesses at a later time. Par. 32. Thus, stories play out one case at a time. Plaintiff's counsel is left with an inability to later compare defendant's stories for accuracy by comparing them.

Pars. 6-9 address handling of confidential designation information, documents, etc. This handling plan is very burdensome to the plaintiff. Of course, the defense is free to handle their documents in any fashion under the proposed plan. More troublesome is the ability to throw the

entire body of discovery under a broad blanket of confidentiality under this CSPO.

Defendant even provides for third parties [not defendant's symbiotic third parties contemplated] to designate information, records and transcripts as confidential. This furthers the problem addressed herein. Par. 11.

Modification of the designation requires defendant to either change its mind [this will not happen] or a court order. Thus, plaintiff must approach the court and seek to lift the veil of secrecy on each record and document. The end result in most cases will be that the public has paid for the court system yet the public is denied access to any information about this defendant under the broad and carefully planned CSPO. Why is it plaintiff's burden to unravel a carte blanche ability to designate by defendant?

Perhaps the worst part of the CSPO is the non-use of information provision concerning any other litigation. Further, the CSPO precludes plaintiff from transmitting, exhibiting or communicating designated information, etc., to anyone other than the several limited categories of people in this specific lawsuit. Par. 13. That precludes other judges, courts, etc., even if defendant failed to produce the same document in other litigation[s]. Of course, after this suit ends, plaintiff would have no records per the "return all records" provision.

As if "confidentiality" was not enough to demand, defendant also demands a second category of confidential called "Attorneys' Eyes Only" to further hinder the clients, experts and others from seeing certain documents, information, etc. This second designation is more over-kill and unnecessary burden and expenses to plaintiff in the handling and use of the records.

The scheme in the CSPO requires each person seeing confidential information to sign an agreement to be bound by the order. Par. 16. This is yet another burden to overcome and task for

plaintiff to accomplish.

The CSPO allows defendant to exclude witnesses from depositions if they deem information, records, etc., as confidential. Par. 17.  The CSPO calls for filing documents under seal, a burden to the clerk of court, which is frequently a burden the court does not enjoy. Pars. 19-20.  Court reporters are required to specially handle the designated information and records and even turn over their notes, etc., to defense counsel after the deposition. Par. 21.

The CSPO places a tremendous burden on plaintiff to unravel its sweeping effects. Par. 22.  It further seeks to reduce the test to "good cause" rather than the higher burden utilized by courts considering imposition of protective orders, ie., to look beyond the face of the protective order and consider broader implications of the order.

The Deferral of Ruling paragraph is designed to prolong the pendency of motions to unravel the effects of the CSPO in defendant's hopes of resolving the case without removal of the blanket of confidentiality. Par. 24.  The objective of the court system and protective orders is not to assist a defendant in sweeping under the rug its misdeeds, evidence of pattern and practice and other facts to show willfulness and reduce litigation to a "one fight at a time" measure.

Defendant even seeks to apply the CSPO to items produced before the entry of a CSPO. Par. 25.  That is inconceivable.  Defendant seeks to still preserve the right to object on all of the other boilerplate bases they have asserted so often despite the entry of the CSPO. Par. 26.

Again, par. 32 calls for return of all designated records after the case is concluded.  This prevents counsel from later comparing defendant's testimony, records or information against other versions at a later date or even during the ongoing proceeding under the language in par.13 of the CSPO.

The CSPO, as requested by defendant, is objected to by plaintiff, is unacceptable on multiple bases: [1] overly broad; [2] unnecessary; [3] sought for improper purposes; [4] failure to meet the burden of proof to acquire a protective order; [5] the CSPO is unduly burdening to plaintiff only.

## Other Argument and Legal Authorities

Plaintiff's counsel is no novice to handling litigation against credit reporting agencies. In each case, it is the defense who seek a protective order in connection with ordinary business records and documents. Many, many times novice plaintiffs' attorneys are left to simply agree to an overly broad protective order and then left to jump through many unnecessary hurdles to comply with the order. These efforts to expedite discovery are used against plaintiffs to actually stymie discovery and throw a sweeping blanket of confidentiality across the discovery developed, especially deposition testimony and ordinary business records wrenched from the defense through disclosure and requests for production of documents.

Here, plaintiff's counsel served defendant with: [1] written interrogatories, and [2] requests for production of documents, and [3] a detailed and specific deposition duces tecum notice along with areas of inquiry. Defendant objected in boilerplate fashion, produced a portion of the records sought and concealed the others under blanket, general objections and a demand for a protective order. Defendant unilaterally caused the postponement of the deposition which was set by plaintiff. Now, defendant has filed a motion for protective order.

On June 15, plaintiff's counsel advised defense counsel that plaintiff could not agree to defendant's proposed protective order and confidentiality request. EXH. A. Plaintiff's counsel requested an explanation as to what defendant claimed was confidential and warranted such

treatment. All counsel agreed to set the deposition of defendant for July 9, at defendant's offices in Georgia. EXHS. A-B.

On June 15, plaintiff's counsel wrote defense counsel a lengthy e-mail explaining plaintiff's objections to a protective order and confidentiality agreement. EXH. C. Plaintiff offered to agree to in camera inspection of the set of allegedly confidential records to allow the court to decide if such a drastic measure of a protective order and confidentiality order was warranted. EXH. C, p.4 of 5, email. Defense counsel claimed it could not read the email and requested the same information in a letter. Szwak complied. EXH. D. On June 21, defense counsel replied but defendant refused to relent on the protective order notion and would not produce information about what it claimed was confidential. EXH. E.

On June 29, with an impending deposition of defendant set for July 9, Plaintiff's counsel advised defendant that plaintiff needed the documents in order to depose defendant. EXH. F. Based on non-receipt of a motion, plaintiff's counsel assumed defendant chose not to seek the protective order. On June 29, plaintiff's counsel again requested a listing of what documents defendant was claiming were worthy of confidential treatment. EXH. G. Plaintiff's counsel asked for a privilege log. Id. Later on June 29, defendant listed nine [9] documents which it claimed were worthy of confidential treatment. EXH. H. Defense counsel claimed that defendant considered "most of the documents sought in the requests to be confidential..." EXH. I. Basically, defendant believes it can operate under a standard veil of secrecy.

On July 2, defense counsel asked to postpone its client's deposition due to the "document issues." EXHS. J, L. On July 2, Szwak reiterated that it is impossible to depose the defendant with no disclosure documents or responses to requests for production or documents under the

deposition duces tecum. EXH. K.  On July 2, defendant acknowledged its concerns about having the court review the documents in camera. EXH. M.  On July 2, Szwak responded again asking for defendant to allow "limited in camera inspection..." EXH. N.  Defendant responded in cat and mouse fashion. EXH. O.  Szwak responded asking defendant to either consent or not consent to a proposed in camera inspection of what amounted to nine documents, per defendant's own listing. EXH. P.  On July 2, Szwak also explained his knowledge to defendant os the nine documents defendant sought to have confidentiality over. EXH. Q.  Szwak refuted the claims of defense counsel and cited where some of the records were already posted on the internet and otherwise available. EXH. Q.  Szwak explained that no secret codes, passwords or other information would be contained in the records. EXH. Q.

On July 3 and 4, plaintiff's counsel responded to defendant's position that defendant would not agree to a joint motion for in camera inspection of the 9 documents. EXHS. R,S,T. On July 5, defense counsel responded and again tried to foist the blanket confidentiality and protective order, claiming that "good cause" existed. EXH. R.  Defense counsel referred to the email exchanges as merely "cluttering" his email in-box. EXH. R.  On July 3, defense counsel sent a letter to plaintiff's counsel suggesting plaintiff postponed defendant's deposition. EXH. U. Upon receipt, on July 9, Szwak replied that postponement resulted from defendant's failure to cooperate and produce documents. EXH. U.  On July 17, Szwak inquired if defendant has filed its threatened motion for protective order. EXH. V.  On August 22 and thereafter, Szwak and co-counsel for plaintiff again and again asked for a date to depose defendant. EXHS. X,Y,Z,AA,BB,CC,DD.  Defense counsel pretended not to know plaintiff was trying to set defendant's deposition. EXH. Y. As of August 29, defendant now wants to re-visit the areas of

inquiry and complains now that the areas are over broad and irrelevant. EXH. AA. Defendant now claims it wants to avoid seeking a protective order. EXH. AA.

As can be seen from the attached exchange of emails and letters, plaintiff's counsel has sought a detailed log detailing what defendant claims to be worthy of confidentiality or other protection. EXHS. A-DD. Defense counsel simply responded with a generic statement and short listing of policy and procedure manuals. Plaintiff's counsel responded with a lengthy and detailed email, then letter, outlining why the cursory list of documents were not confidential and recited that in **Catherine Taylor v. Equifax and Choicepoint, et al,** cause no. 4:06CV0496, U.S.D.C. E.D. Ark., this same defendant produced documents and a corporate representative as a deponent under the same notice of deposition duces tecum, with the same areas of inquiry.[2] EXH. DD. In Taylor, plaintiff's counsel [Szwak] did not agree to such a protective order and Choicepoint produced documents and a witness [Teresa Preg] to testify about the match logic and all policies and procedures at Choicepoint. If it pleases the court, plaintiff will file that transcript but it is voluminous. Counsel can supply it via email if the court prefers. Mrs. Preg testified about the details of the match logic without any protective order or confidentiality. EXH. DD. Defense counsel asked plaintiff's counsel to agree to a broad [stipulated] protective order which is unnecessary.

Plaintiff's counsel, in this case, offered to seek in camera inspection by this Honorable Court of the documents defendant seeks to impose the burden of confidentiality upon to check

---

[2] In the deposition, Choicepoint's counsel produced several document, including ChoicePoint Workplace Solutions Employment Service Center Reference Guide [EXH. 53 - which is nothing more than Choicepoint's standard operating procedure manual for conducting the consumer dispute and consumer disclosure process. Preg. p.14, deposition], EXH. 54-55 [Subscriber contract and direct access inquiry information. Nothing confidential about these either].

and be sure that such protection was warranted. Defendant refused. What could possibly by objectionable about having the court look at the documents and decide?

The reality is that the defendant simply wants to stymie discovery, prevent the public from learning about the widespread defects in their match logic and procedures/policies and try to sweep under the rug the trail of victims they leave through false consumer reportings.

Your Honor will note that several courts have actually taken the time to review these so-called confidential records claimed by defendant's competitors and have ruled that there is nothing confidential about the records at all. As one example, in **Zahran v. Trans Union Corp.**, Not Reported in F.Supp.2d, 2002 WestLaw 31010822 [U.S.D.C. N.D. Ill. 2002], plaintiffs brought action against the credit reporting agencies alleging violation of the Fair Credit Reporting Act. One credit reporting agency moved for protective order and requested that certain exhibits [manuals] be filed under seal. The District Court, Judge Keys, held that neither the credit reporting agency's consumer relations policies in its handbook, or its subscriber agreements with creditors qualified as trade secrets or other confidential information, precluding issuance of protective order for those documents. The motion was denied. In **Zahran v. Trans Union Corp.**, supra, the court shot down Trans Union's bizarre hacker proposition and deemed it unrealistic. Yet, this is the problem we repeatedly face. The agencies seek to prevent access to records and hinder discovery to a great degree. Also, see and consider **Deborah Moore v. CSC Credit Services, Inc.**, Civil Docket No. 2:02-CV-303 [U.S.D.C. E.D. Tex. 1/13/2004] [Judge Ward sanctioned Equifax (the mother company of this defendant) for multiple discovery abuses, including withholding documents and asserting baseless privilege objections]; **Deandrade v. Trans Union**, 2005 WestLaw 3367048 [U.S.D.C. R.I. 7/19/2005].

In yet another case where a credit reporting agency stymied discovery through claims of confidentiality, **Carol Mixon v. Experian, et al**, cause no. 2:99CV00092 [U.S.D.C. E.D. Tex.], Magistrate-Judge McKee forced Experian to produce its records and refused to permit the charade to proceed. At one point Judge McKee ordered Experian to open its facility doors and permit an intensive search of the facility for records that had been concealed. Miraculously, the records were produced. Comparably, in **Michael Nagle v. Experian**, cause no. CV-99-J-3297-S [U.S.D.C. N.D. Ala.], Judge Inge Johnson held that the Experian's Administrative Report [of Michael Nagle] would be produced absent any confidentiality designation. Judge Johnson also rejected arguments to throw a blanket of confidentiality over other Experian procedures and policy manuals. She found that the documents at issue simply do not warrant extraordinary protection and non-disclosure from the public. There was no secretive formula or set of data.

The policies and procedures for compliance are simply not "trade secrets" or worthy of the status as confidential. Many of the bureau manuals and "codes" are even posted on the internet by the agencies themselves, their customers and the agencies' trade organizations, including CDIA.

Other courts have taken a position of forcing defendant to meet the burden of proving that protection is warranted. The Seventh Circuit has ordered that all parties seeking protective orders before its lower courts must provide a detailed account of which documents the parties wish to cloak in secrecy and to provide factual and legal reasoning and authority. **Baxter Int'l, Inc. v. Abbott Labs.**, 297 F.3d 544, 548 [7th Cir. 2002]. The court ruled that bald assertions of confidentiality, such as a statement by a movant that "disclosure could ... harm [the movant's] competitive position" is insufficient. Id. at 547 [internal quotation omitted]. The court observed

that documents containing both trade secrets and non-protectable information need only have certain portions of the documents redacted in order to maintain trade secrecy. **Citizens**, 178 F.3d at 945.

"Pretrial discovery is often performed in private, although "**the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding**. [emphasis added.]." **Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.**, 178 F.3d 943, 944-45 [7th Cir.1999]. However, in order to protect the privacy interest of the parties throughout the proceedings, Federal Rule of Civil Procedure 26[c][7] permits a court to grant a protective order "for good cause shown....[in order that] a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way...[emphasis added.]" Fed. R. Civ. P. 26[c][7][2002] ["Rule 26[c][7]"]. A court need not grant a protective order unless it is satisfied that the order is being sought for an actual trade secret or confidential business information and that there is good cause for the protective order. See, **Citizens**, 178 F.3d at 946; **Culinary Foods, Inc. v. Raychem Corp.**, 151 F.R.D. 297, 300 [N.D. Ill.1993] [citing **Cipollone v. Liggett Group, Inc.**, 785 F.2d 1108, 1121 [3d Cir.1986]]. A showing of good cause prevents parties from having "carte blanche to decide what portions of the record shall be kept secret," and prohibits courts from "rubber stamp[ing] a stipulation to seal the record." **Citizens**, 178 F.3d at 945." **Zahran v. Trans Union Corp.**, Not Reported in F.Supp.2d, 2002 WestLaw 31010822 [U.S.D.C. N.D. Ill. 2002]. The court must independently determine whether good cause exists. **Creer v. City of Elkhart**, Slip Copy, 2007 WestLaw 1521442 [U.S.D.C. N.D. Ind. 2007]. The Court must not grant parties *carte blanche* to seal or protect whatever they desire. **Citizens**, 178 F.3d at 944; see also **Pierson v. Indianapolis**

**Power & Light Co.**, 205 F.R.D. 646, 647 [U.S.D.C. S.D. Ind. 2002] ["Independent and careful evaluations of protective orders are especially important because '[t]he judge is the primary representative of the public interest in the judicial process ...."], quoting **Citizens**, 178 F.3d at 945). In other words, this Court cannot serve as a rubber stamp whenever parties wish to seal public records, but must review all requests to seal documents in light of the public interest in the judicial process. **Citizens**, 178 F.3d at 945, citing **In re Krynicki**, 983 F.2d 74 [7th Cir.1992]; Miller, Arthur M., *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L.Rev. 427, 492 [1991].

Your Honor has great latitude in fashioning a protective order if you decide one is warranted. "The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." **Seattle Times Co. v. Rhinehart**, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 [1984]. The trial court has not abused its discretion "unless no reasonable person would have decided the way the judge did." **Howell v. Spokane & Inland Empire Blood Bank**, 117 Wash.2d 619, 629, 818 P.2d 1056 [1991]. Whether or not a protective order should be issued in any given case depends on the circumstances of that case. **Vidal v. Experian Information Solutions, Inc.**, Not Reported in F.Supp.2d, 2005 WestLaw 281200 [U.S.D.C. E.D. Pa. 2005].

Courts have equally chosen not to invoke unnecessary protective orders that have served to simply conceal evidence of other wrongs, improper conduct and to effectively conceal from the public's knowledge information that it has a right to know. Alabama's sister states seek to limit improper use of broad, blanket protective order designed to stymie discovery and public access. See, ex., **Eli Lilly and Co. v. Marshall**, 829 S.W.2d 156, [Tex. 1991] [NO. D-1827].

Defendant seeks the protection of the courts then wants to direct the access to public records. Texas courts have sought to insure the "the free flow of information." Id.  Where consumer rights are concerned, there is no area of law posing a greater need for open access to records and information.  There is "a strong presumption in favor of access to court records." **Foltz v. State Farm Mut. Auto. Ins. Co.**, 331 F.3d 1122, 1135 [9th Cir.2003].  Overcoming this presumption requires a showing of compelling reasons for denying access. **Foltz**, 331 F.3d at 1135. If a district court grants a motion to seal any documents filed in a summary judgment motion, it must "articulate the factual basis for [the] ruling, without relying on hypothesis or conjecture." **Foltz**, 331 F.3d at 1135, quoting **Hagestad v. Tragesser**, 49 F.3d 1430, 1434.

Plaintiffs' counsel is mindful of this Honorable Court's position on discovery disputes and plaintiffs' counsel went above and beyond in conferring and attempting to resolve and pare down the dispute to avoid this contest.  Discovery disputes should be avoided where possible. Parties must provide the court a detailed outline of steps taken by counsel to resolve a dispute prior to seeking judicial intervention. The parties must engage in "meaningful negotiations" or have "personally discussed with opposing counsel a reasonable resolution to their discovery dispute." **Shuffle Master v. Progressive Games**, 170 F.R.D. 166, 172 [D. Nev. 1996]; **Amy Lewis, etal v. Equifax Credit Info. Services**, Cause No. 2:98CV0035 [TH] [U.S.D.C. E.D. Tex. 8/12/98] [unpublished order].

In sum, plaintiff seeks a reasonable resolution to the issue of a protective order.  Plaintiff does not believe anyone has shown a need for one but, in the spirit of compromise, plaintiff's counsel tried to work out a fair and feasible in camera inspection process.  Defendant's motion should be denied.

Respectfully submitted,

**BODENHEIMER, JONES & SZWAK, LLC**

By: _____
**DAVID A. SZWAK**, La.BR #21157, TA
509 Market Street, Suite 730
United Mercantile Bank Building
Shreveport, Louisiana 71101
[318] 221-6444
FAX 221-6555

**M. STAN HERRING, P.C.**

By: _____
**M. STAN HERRING**, ABA#_____
201 Avon Place
700 29th Street South
Birmingham, Alabama 35233

**WATTS LAW GROUP, PC.**

By: _____
**JOHN WATTS**, ABA#_____
15 Office Park Circle, Suite 206
Birmingham, Alabama 35223
**Counsel for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon opposing counsel of record by telefax and by placing a copy of same in the United States Mail, properly addressed and first class postage pre-paid. This the 5th day of September, 2007.

_____
OF COUNSEL